UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

MATTHEW DeROCHA,

                               Plaintiff,

     v.                                                        5:18-CV-1052
                                                                       (GLS/ATB)

NORTH SYRACUSE POLICE,

                               Defendant.
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
MATTHEW DeROCHA
Plaintiff, pro se

ANDREW T. BAXTER, United States Magistrate Judge

**ORDER and REPORT-RECOMMENDATION**

**I.    Procedural History**

      Plaintiff filed his original complaint in this case on September 4, 2018, together with an incomplete application to proceed in forma pauperis ("IFP"). (Dkt. Nos. 1, 2). I conducted an initial review of the complaint, and issued an Order and Report-Recommendation ("ORR"), ordering that plaintiff properly complete his IFP application, and recommending dismissal of his complaint on the merits with leave to amend. (Dkt. No. 5). On October 22, 2018, plaintiff filed a renewed motion to proceed IFP, and instead of filing objections to my ORR, he filed an amended complaint. (Dkt. Nos. 10, 11). On October 24, 2018, I found that plaintiff properly completed his motion to proceed IFP, and that he meets the financial criteria to proceed without payment of fees. (Dkt. No. 12). Thus, I granted IFP for purposes of filing and for consideration of my ORR. (*Id.*) On October 29, 2018, Senior Judge Gary L. Sharpe, adopted my ORR, and he has sent me the plaintiff's amended complaint ("AC") for review. (Dkt. Nos. 12, 13).

**II.     Legal Standards for Review of IFP Proceedings**

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974).  Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*,

2

550 U.S. at 555). The court will now turn to a consideration of the plaintiff's proposed amended complaint under the above standards.

## II.    Facts

Plaintiff alleges that on May 3, 2013, he was arrested in the Village of North Syracuse for Driving While Intoxicated ("DWI") and Aggravated DWI by Officers Linstruth and Tripp of the North Syracuse Police Department. (AC ¶ 4 at 2). Plaintiff states that he was not "Driving Under the Influence." (*Id.*) Plaintiff states that he was told to appear before Judge Bertrand[1] on June 3, 2013, when plaintiff's license was suspended. (*Id.*) Plaintiff states that he requested a trial date "that day." (*Id.*)

The amended complaint contains three causes of action. The first is for "False Arrest," alleging only that he was arrested by Officer Linstruth on May 13, 2013, and that "Officer Tripp was also there." (AC ¶ 5 at 3). The second cause of action alleges "Wrongful Imprisonment," stating that plaintiff was handcuffed, put in the back of the police car, and transported to the North Syracuse Police Station, where he was handcuffed to a bench. (*Id.*) The third cause of action alleges "Malicious Prosecution," stating that plaintiff was acquitted of DWI and Aggravated DWI after a jury trial on February 2, 2017. However, plaintiff then states that his license was suspended, and he ended up with two "auos,"[2] one of which is "on [his] record that [he] plead gilty [sic] to [sic]." Plaintiff also states that he waited four years to get a trial. He missed work, and he states that the trial dates were difficult to attend without a license "for a while." (*Id.*)

---

[1] The court notes that the Village of North Syracuse no longer has a Village Court. The North Syracuse Board of Trustees voted to abolish the Village Court as of May 31, 2018. http://northsyracuseny.org/departments/court-office.

[2] The court assumes that plaintiff is referring to two counts of "aggravated unlicensed operation" of a vehicle.

3

Plaintiff seeks $15,000.00 in damages. (AC ¶ 6 at 4).

### III. False Arrest/False Imprisonment

#### A. Legal Standards

A plaintiff may bring a section 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable searches and seizures. *Minott v. Duffy*, No. 11 Civ. 1217, 2014 WL 1386583, at *10 (S.D.N.Y. Apr. 8, 2014) (citing *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999)). The standard is the same as a false arrest claim under New York law, which requires that the defendant intended to confine the plaintiff, plaintiff was conscious of the detention, plaintiff did not consent to the detention, and the confinement was not otherwise privileged. *Id.* at *10 (citing *Gaston v. City of New York*, 851 F. Supp. 2d 780, 787 (S.D.N.Y.2012) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir.2003)). However, the existence of probable cause is an absolute defense to a false arrest claim. *Id.* (citation omitted).

A claim for false arrest accrues when a criminal defendant is bound over by a Magistrate or arraigned on charges. *Wallace v. Kato*, 549 U.S. 384, 389 (2007). This is unlike a claim for malicious prosecution, which does not accrue until the criminal case is resolved in the defendant's favor. *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995).

#### B. Application

Plaintiff's original complaint did not contain the date of his arrest, nor did it contain the date that he was arraigned on the DWI charges. In the amended complaint, plaintiff states that he was arrested by the officers on May 13, 2013, and he appeared before Judge Bertrand on June 3, 2013. (AC ¶ 4 at 2). A section 1983 action must be brought within ***three years*** of the accrual of plaintiff's claim. *Owens v. Okure,* 488 U.S. 235, 249-50 (1989); N.Y. C.P.L.R. § 214. Statutes of limitations are normally

4

affirmative defenses which may not be decided on the pleadings alone. *Sherman v. Holecek*, No. 3:16-CV-1342, 2018 WL 4119119, at *3 (N.D.N.Y. Aug. 29, 2018) (citation omitted). Dismissal on the pleadings may be appropriate where the pleading "*facially* shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Id.* (citing *Ntsebeza v. Daimler (In re S. African Apartheid Litig.)*, 617 F. Supp. 2d 228, 287 (S.D.N.Y. 2009) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994)).

In this case, plaintiff was not incarcerated after his arrest,[3] and he was apparently given an appearance ticket. He states that he "was told" to appear before Judge Bertrand on June 3, 2013. Thus, the statute of limitations for any "false arrest" or "false imprisonment" claim would have arguably begun to run the day that plaintiff was arrested and released. If plaintiff had been incarcerated after his arrest, the statute of limitations for plaintiff's section 1983 false arrest and unlawful imprisonment[4] claims would have started running on the date that he appeared before Judge Bertrand - June 3, 2013. Thus, at the latest, the three-year statute of limitations for the false arrest claims would have expired on June 3, 2016. Plaintiff did not file his original complaint until September 4, 2018, well beyond the expiration of the statute of limitations for plaintiff's first two causes of action.[5]

---

[3] Plaintiff states that he was brought to the police station, but then was "told" to appear before the Judge on June 3, 2013. Clearly, he was released after his initial detention.

[4] False arrest is a "species" of "false imprisonment," and the statute of limitations for a section 1983 claim begins to run at the same time. *Lynch v. Suffolk County Police Dep't, Inc.*, 348 F. App'x 672, 675 (2d Cir. 2009) (quoting *Wallace v. Kato*, 549 U.S. at 388-89).

[5] In plaintiff's second cause of action, he states that his claim of "wrongful imprisonment" includes being placed in handcuffs, being transported to the police station, and "cuffed" to a bench. (AC ¶ 5). To the extent that plaintiff is attempting to raise some sort of "conditions of confinement" or

5

Although, in certain cases, equitable tolling is available, a plaintiff who seeks equitable tolling of the statute of limitations must establish that he or she has been pursuing his or her rights "diligently," and that some "extraordinary circumstance" stood in the way to prevent timely filing. *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010) (citation omitted). Equitable tolling is available "'where necessary to prevent unfairness to a plaintiff who is not at fault for [his] lateness in filing.'" *Andrew v. J.P. Morgan Chase & Co.*, No. 18-CV-4421, 2018 WL 4926440, at *3 (S.D.N.Y. Oct. 9, 2018) (quoting *Gonzalez v. Hasty*, 651 F.3d 318, 322 (2d Cir. 2011)). It is a "rare" remedy which may be applied only in unusual circumstances, and is not a "cure-all" for "an entirely common state of affairs." *Id.* (quoting *Wallace*, 549 U.S. at 396). It applies only when the plaintiff is "prevented" from filing his action, despite exercising "'that level of diligence which could reasonably be expected in the circumstances.'" *Id.* (quoting *Gonzalez, supra*).

In this case, plaintiff was not incarcerated pending his trial, and the complaint contains absolutely no justification for plaintiff to have waited this long to bring an action for the false arrest/imprisonment claims.[6] Based on the facts that plaintiff has

---

"excessive force" claim, the statute of limitations would have started running when the incident occurred, and the three years would have expired on May 13, 2016. *See Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (in most cases, a cause of action under section 1983 accrues when the plaintiff knows or has reason to know of the injury which is the basis of his action). If plaintiff in this case were also claiming that the force used to arrest him was excessive or the conditions at the jail were unconstitutional, he would have known of his injury the same day, and any related claims would also be barred by the statute of limitations.

[6] The court notes that a New York State common law claim of false imprisonment accrues as of the date of the plaintiff's release from confinement. *Lynch*, 348 F. App'x at 675-76 (citing inter alia *Jackson v. Police Dep't of the City of N.Y.*, 119 A.D.2d 551, 552, 500 N.Y.S.2d 553 (2d Dep't 1986)). If a plaintiff is incarcerated continuously, the statute of limitations may for the common law claim may accrue much later, when he is released from the allegedly illegal confinement. However, in this case, it is apparent that plaintiff was not incarcerated from the time of his arrest to the time of his "trial" in

6

stated in his amended complaint, it is clear that the statute of limitations for false arrest and false imprisonment has run, and that there could be no exceptional circumstances that would justify tolling the statute. Thus, plaintiff's first and second causes of action may be dismissed.

## IV. Malicious Prosecution

### A. Legal Standards

A malicious prosecution claim under New York law requires the plaintiff to show "'a seizure or other perversion of proper legal procedures implicating [his] personal liberty and privacy interests under the Fourth Amendment.'" *Lanning v. City of Glens Falls*, No. 17-970, __ F.3d __, 2018 WL 5810258, at *3 (2d Cir. Nov. 7, 2018) (quoting *Washington v. County of Rockland*, 373 F3d 310, 316 (2d Cir. 2004) (alteration in original)). Plaintiff must also show that the criminal proceedings were initiated or continued against him "with malice, without probable cause, and were terminated in his favor." *Id.* (citing *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016); *Swartz v. Insogna*, 704 F.3d 105, 111-12 (2d Cir. 2013)).

In *Lanning*, the Second Circuit clarified that federal law defines the elements of a

---

2017. Plaintiff's cause of action would have started to run when he was released from his arrest, which appears to have been shortly after he was arrested on May 13, 2013. In addition, New York State claims, brought under supplemental jurisdiction would be subject to the state law statute of limitations. *See Santiago v. City of New York*, No. 15-CV-00517, 2016 WL 11447843, at *4 (E.D.N.Y. Sept. 6, 2016) ("While federal civil rights claims are governed by a state's general statute of limitations, where a complaint also alleges violations of state law, the state claims must meet their specific statutory requirements.") (Rep't-Rec), *adopted*, 2016 WL 5395837 (E.D.N.Y. Sept. 27, 2016). Under New York State law, plaintiff would have had 90 days from the date of his release to file a "notice of claim" against the municipality for false imprisonment. There is no indication that plaintiff filed a notice of claim against the Village of North Syracuse. The statute of limitations for intentional tort claims against municipalities is one year and 90 days. *Boggs v. Town of Riverhead*, No. 2:17-CV-5411, 2018 WL 5830824, at *4 (E.D.N.Y. Nov. 7, 2018) (citing N.Y. Gen. Mun. Law § 50-i(c)). Thus, to the extent that plaintiff is attempting to bring a New York State common law claim of false imprisonment, under supplemental jurisdiction, the statute of limitations has likely run.

section 1983 malicious prosecution claim, and that the state's tort law serves only as a source of persuasive authority. *Id.* The federal standard requires that the underlying criminal proceeding be terminated in a manner that is "indicative of plaintiff's innocence." *Id.* (emphasis in original). New York State courts have recently held that the favorable termination element is satisfied as long as the termination of the criminal proceeding "is not inconsistent with the Plaintiff's innocence." *Id.* (quoting *Penree v. City of Utica*, No. 6:13-CV-01323, 2016 WL 915252, at *17 (N.D.N.Y. Mar. 4, 2016)) (emphasis in original).

Notwithstanding the Second Circuit's previous holdings, stating that claims for malicious prosecution under section 1983[7] are "substantially the same" as claims for malicious prosecution under state law, the court in *Lanning* made clear that the court's prior decisions requiring "affirmative indications of innocence to establish "favorable termination" govern the section 1983 analysis "regardless of developments in New York State malicious prosecution law." *Id.*

### 1. Favorable Determination

Plaintiff states that the Aggravated DWI and DWI charges were "both acquitted" after a jury trial on February 8, 2017, but there is no allegation that the charges were brought or continued due to malice. In addition, although plaintiff states that he was "acquitted," he also states that his license was suspended and he "ended up" with "2 auos," one of which is on his "record that [he] plead guilty to." (AC ¶ 5 at 3). The court notes that a prior driving while intoxicated charge can constitute a material element of

---

[7] The court distinguished malicious prosecution claims brought under New York law, in which case, the court must "faithfully apply New York tort law." *Lanning*, 2018 WL 5810258, at *6 (citations omitted).

aggravated unlicensed operation of a motor vehicle. *See People v. De Maio*, 304 A.D.2d 968, 989 (3d Dep't 2003).  If plaintiff pled guilty to a related charge, then he may be unable to establish an "affirmative indication of innocence."  The court considers whether the acquittal charges and the conviction charges are sufficiently distinct to constitute a favorable determination on the acquittal charge. *See Janetka v. Dabe*, 892 F.2d 187, 189-90 (2d Cir. 1989).  In this case, the court does not have enough information about the acquittals and the guilty pleas to determine whether the "favorable determination" element has been met.  Thus, the court will assume that plaintiff has sufficiently alleged that he obtained a favorable determination.

### 2.     Probable Cause and Malice

Plaintiff alleges that he was arrested for the DWI and Aggravated DWI, but he was not driving under the influence.  Although plaintiff does not specifically say that he was arrested without probable cause, for purposes of initial review, the court will assume that plaintiff claims he was arrested without probable cause.  Plaintiff does not allege that the prosecution was "continued" with malice, but the court may not make this determination on initial review, given plaintiff's pro se status.  Thus, the court will continue its analysis.

### 3.     Municipal Liability/Personal Involvement

In my prior ORR, I found that plaintiff failed to name any particular defendant. (Dkt. No. 5 at 7) (citing *Blythe v. City of New York*, 963 F. Supp. 2d 158, 183 (E.D.N.Y. 2013) (the individual police officers who arrested plaintiff would be the proper defendants for any false arrest or malicious prosecution claim)).  Although plaintiff has mentioned the two officers who arrested him for the DWI charges in the fact section of the amended complaint, he has neglected to name them as defendants in the caption.

He has named only the Village of North Syracuse. Thus, the court will first address the possibility of municipal liability.

A municipality may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. *LaVertu v. Town of Huntington*, No. 13-CV-4378, 2014 WL 2475566, at *3 (E.D.N.Y. Apr. 4, 2014) (citing inter alia *Los Angeles County, Cal. v. Humphries*, __ U.S. __, 131 S. Ct. 447, 452 (2010)), (Rep't-Rec.), *adopted in relevant part*, 2014 WL 2506217 (E.D.N.Y. June 2, 2014). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly. Finally, municipal liability can, under certain circumstances, be based upon a failure to properly train the municipality's employees. *See City of Canton v. Harris*, 489 U.S. 378, 387-90 (1989).

In this case, plaintiff has failed to properly allege municipal liability. There is no indication that the Village of North Syracuse policy makers had any involvement or

knowledge of the alleged deprivation of constitutional rights, sufficient to establish a policy or custom. There are also no allegations of similar conduct by the officers that plaintiff names in his amended complaint or other officers from the North Syracuse Police Department. Thus, the case must be dismissed as against the Village of North Syracuse.

Notwithstanding plaintiff's failure to name the individual defendants in the caption, in the False Arrest section of the amended complaint, he names Officer Linstruth as the arresting officer and states that "Officer Trip[p] was also there." (AC ¶ 5 at 3). Because plaintiff is pro se and is making an attempt to cure the defects in his original complaint, the court will assume that plaintiff meant to name the two officers who arrested him - Officers Linstruth and Tripp - as defendants in the malicious prosecution claim.

With this liberal assumption by the court, plaintiff may state a claim for "malicious prosecution,"[8] sufficient to allow the action to proceed as against the individual defendants for the following reasons.[9] To satisfy the elements of a malicious prosecution claim, it must be shown that the defendant "played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Hutchins v. Solomon*, No. 16-CV-10029, 2018 WL 4757970, at *12 (S.D.N.Y.

---

[8] Unlike the false arrest claim, there is no statute of limitations problem in the malicious prosecution claim because the latter claim does not accrue until the criminal case is resolved in the plaintiff's favor. *See Proventud v. City of New York*, 750 F.3d 121, 130-131 (2d Cir. 2014) (discussing elements and accrual of malicious prosecution claims). Plaintiff states that he was "acquitted" of the DWI charges on February 28, 2017, thus, the three year statute of limitations had not expired when he filed this action.

[9] This court's finding is for purposes of initial review only. In making this determination, this court expresses absolutely no opinion on the ultimate merits of plaintiff's malicious prosecution claim or whether it would survive a properly supported motion to dismiss or one for summary judgment.

11

Sept. 29, 2018) (citing *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006) (citations and internal quotation marks omitted)). In malicious prosecution cases brought against police officers, plaintiffs have demonstrated that the officers initiated criminal proceedings by "having the plaintiff arraigned, by filling out complaining and corroborating affidavits, and by signing felony complaints." *Id.* (citing *Llerando Phipps v. City of New York*, 390 F. Supp. 2d 372, 383 (S.D.N.Y. 2005); *Costello v. Milano*, 20 F. Supp. 3d 406, 415 (S.D.N.Y. 2014)).

Although there is a presumption that the prosecutor exercises independent judgment in deciding whether to initiate or continue the criminal proceeding, the arresting officer may be held liable for malicious prosecution when the officer creates false information "likely to influence a jury's decision and forwards that information to prosecutors . . . or when she withholds relevant and material information." *Id.* (citations omitted). In *Zahrey v. Coffey*, 221 F.3d 342, 352 (2d Cir. 2000), the Second Circuit held that even it the intervening decision-maker, such as the prosecutor or the grand jury, is not misled or coerced, "it is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty." *Id.* (footnote omitted).

In this case, there is insufficient information in either complaint regarding the arrest and prosecution of plaintiff's DWI charges for the court to make an informed decision about the degree of the officers' involvement in plaintiff's prosecution. However, the officers arrested plaintiff and presumably completed the paperwork to charge him with DWI and Aggravated DWI. Thus, the officers' personal involvement has been established for purposes of ***initial review only***.

### 4. Deprivation of Liberty

In actions brought pursuant to section 1983 for malicious prosecution, the plaintiff must have suffered a "post-arraignment deprivation of liberty implicating his Fourth Amendment rights." *Pryor v. Guzman*, No. 17-CV-5388, 2018 WL 4538905, at *4 (S.D.N.Y. Sept. 21, 2018) (citing *Jocks*, 316 F.3d at 136). In this case, plaintiff was taken to the police station after his arrest, but clearly he was released because he states that he was "told" to appear before the Judge. Plaintiff states that he waited four years to go to trial, that the court dates were difficult to attend, that he missed work, and that "it was hard to do all together." Although plaintiff has eliminated this allegation from his amended complaint, in his original complaint, he alleged that he was required to appear in court from once to three times per month for three years. (Compl. ¶ 4 at 2) (Dkt. No. 1). Even if plaintiff appeared only once per month for three years, that would be a total of approximately 36 court appearances.

The Second Circuit has held that a "plaintiff may sufficiently establish a deprivation of liberty when he or she is detained before arraignment, required to be available to reappear before the state court at any time and therefore limited in his or her travel after being released from custody, and makes at least one post-arraignment appearance before a state court." *Hanson v. New York City*, No, 15-CV-1447, 2018 WL 1513632, at *17 (E.D.N.Y. Mar. 27, 2018) (citing inter alia *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013) ("We have consistently held that a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required suffers a . . . deprivation of liberty." (internal quotation marks omitted) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997); *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 216 (2d Cir. 2000) (holding that a plaintiff established a

13

deprivation of liberty where the conditions of post-arraignment release required him to remain available to return to court and therefore remain in the state)). In addition to the number of court appearances, courts have considered whether a plaintiff's travel outside of the state was restricted, finding that the deprivation of liberty rose to the constitutional level because plaintiff had a constitutional right to travel outside the state. *Murphy v. Lynn*, 118 F.3d at 946. The court in *Murphy* relied heavily upon the travel restriction as a condition of release to find the requisite deprivation of liberty. *Id.*

Other courts have distinguished *Murphy*, finding that a plaintiff's allegations that he had to make "repeated trips" and had "numerous court appearances" were insufficient because they were vague and did not include any additional restrictions. *Pryor v. Guzman*, 2018 WL 4538905 at *4-5 (citing inter alia *Burg v. Gosselin*, 591 F.3d 95, 101 (2d Cir. 2010) (a pre-arraignment, non-felony summons requiring no more than a later court appearance does not rise to the level of a Fourth Amendment seizure); *Faruki v. City of New York*, 517 F. App'x 1, 1 (2d Cir. 2013) (restrictions found insufficient when state court placed no restrictions on plaintiff other than a requirement that she appear in court on two occasions); *Arbuckle v. City of New York*, No. 14 Civ. 10248, 2016 WL 5793714, at * 10 (S.D.N.Y. Sept. 30, 2016) (dismissing malicious prosecution claim because plaintiff alleged only that he was required to make at least three court appearances after his arraignment)). The court in *Pryor* distinguished *Murphy* and *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208 (2d Cir. 2000) because in *Murphy*, the state court imposed interstate travel restrictions and required eight court appearances, and in *Rohman*, the state court limited plaintiff's interstate travel and required five court appearances. *Pryor*, 2018 WL 4538905 at *5 & n.8.

However, in *Swartz v. Insogna*, the court found a Fourth Amendment seizure and

14

stated that the district court's reliance on *Burg v. Gosselin* was inappropriate because there was no malicious prosecution claim in *Burg*, and the Circuit court's reference to such a claim in *Burg* was "dictum." *Swartz*, 704 F.3d at 112.  The court in *Swartz* also stated that *Burg's* dictum was "questionable," and that "we decline to apply that dictum to the different context of a plaintiff who was required to appear in court in connection with criminal proceedings initiated by the defendant police officer." *Id.*  In addition, the court in *Burg* was considering a "pre-arraignment" summons which required a later appearance in court.

In *Mazzone v. Town of Southampton*, 283 F. Supp. 3d 38, 53 (E.D.N.Y. 2017), the court stated that more recent Second Circuit decisions in this area have "mudd[ied] the waters."  Courts attempting to reconcile *Burg* and *Insogna* have focused on the distinction between a pre-arraignment summons and a post-arraignment release on conditions, holding that the pre-arraignment summons, requiring a few subsequent court appearances, does not implicate the Fourth Amendment, while post-arraignment release on conditions, which also includes various court appearances, and often travel restrictions, may rise to the level of a Fourth Amendment seizure for purposes of a malicious prosecution claim. *Id.* at 53-54 (citing cases). *Cf. Norton v. Town of Islip*, 97 F. Supp. 3d 241, 263 (E.D.N.Y. 2015) (discussing inter alia *Parkash v. Town of Southeast*, No. 10-CV-8098, 2011 WL 5142669 (S.D.N.Y. Sept. 30, 2011) in which the court held that having to appear in court, in itself, is insufficient to establish a Fourth Amendment seizure for purposes of a malicious prosecution claim. *Id.* at *5–6.  In *Parkash*, the court found that plaintiff's 15 court appearances were insufficient in themselves to establish a deprivation of liberty where plaintiff was not also restricted in his ability to travel. *Id.*

In this case, as stated above, plaintiff claimed in his original complaint that he had to appear *at least* 36 times in connection with these charges. He also claimed that he moved to Florida, so that it is possible that no restriction on interstate travel was imposed as a condition of his release.[10] However, he also states that he had to come back to New York State with two weeks notice for trial, had to move back to New York, and lost his job as a result of all of the travel to court. Although, plaintiff failed to add these facts to his proposed amended complaint, because they are important to his ability to state a claim for purposes of initial review, the court will read the original and the proposed amended complaint together.[11] The court must also note that all of the cases cited above were decided on dispositive motions after the defendants were served and appeared in the action. This court will, therefore, allow plaintiff's malicious prosecution claim to go forward against the two officers who allegedly arrested plaintiff, Officers Linstruth "ID#114" and Officer Tripp.[12]

## V. Conclusion

In allowing plaintiff's malicious prosecution claim to go forward against the officers, the court realizes that there may be some issues identifying the defendants.[13]

---

[10] This assumes that plaintiff did not violate a condition of release by moving to Florida.

[11] Generally, the amended complaint must completely supercede the original, leaving the original of no force and effect. Although I advised plaintiff that he needed to file a complete amended pleading, because these facts are critical to his claim, the court will allow the complaints to be read together to the extent that it is appropriate for plaintiff to state his malicious prosecution claim as discussed above.

[12] Plaintiff states that he does not know Officer Tripp's identification number. (AC ¶ 4 at 2).

[13] Also, as stated above, depending how the facts develop in this action, there may be other issues arising regarding personal involvement of the officers and even whether plaintiff had a sufficient deprivation of liberty to proceed with his claims. This court's decisions are based the bare facts alleged in the complaint and the amended complaint.

Although plaintiff includes an identification number for Officer Linstruth, plaintiff does not have an identification number for Officer Tripp. Plaintiff does not have a first name for either defendant. Thus, if the District Court approves this Recommendation, and sends the case back to me for further proceedings, I will order service on the Village of North Syracuse for purposes of proper identification of, and service of process on, the individual defendants in this case. *See Valantin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997) (suggesting that the court should assist a pro se litigant with his inquiry as to the identities of the unknown defendants).

In addition, in the interest of reading plaintiff's pleadings to raise the strongest arguments they suggest,[14] the court will direct the Clerk to attach a copy of the original complaint to the amended complaint so that the documents may be read together.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Clerk attach a copy of plaintiff's original complaint (Dkt. No. 1) to the amended complaint (Dkt. No. 11), and that the combined document become the amended complaint in this action, and it is

**RECOMMENDED**, that plaintiff's False Arrest/Unlawful Confinement claims (First and Second Causes of Action) be **DISMISSED WITH PREJUDICE IN THEIR ENTIRETY** as against **ALL DEFENDANTS**, and it is

**RECOMMENDED**, that the complaint be **DISMISSED IN ITS ENTIRETY AS AGAINST THE VILLAGE OF NORTH SYRACUSE**, but that the Village of North Syracuse remain as a defendant in this action for purposes of identifying defendants and serving them with process, and it is

---

[14] *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (Pro se pleadings are interpreted to raise the strongest arguments they suggest.)

**RECOMMENDED**, that if the District Court adopts this ORR, the plaintiff's malicious prosecution claims go forward as against defendants **Lindstruth** and **Tripp**, and it is

**RECOMMENDED**, that if the District Court adopts this ORR, the amended complaint be returned to me for further orders regarding service and further proceedings consistent with the above Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: November 27, 2018

*[signature]*
Hon. Andrew T. Baxter
U.S. Magistrate Judge